IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Scott Tabalus,                          )        Civil Action No. 8:13-cv-02211-BHH-JDA
                                        )
            Plaintiff,                  )
                                        )        **REPORT AND RECOMMENDATION**
                                        )        **OF MAGISTRATE JUDGE**
        vs.                             )
                                        )
Carolyn W. Colvin,                      )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )

        This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claim for disability insurance benefits ("DIB"). For the reasons set forth, the undersigned

recommends that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

        On January 7, 2010, Plaintiff protectively filed an application for DIB, alleging an

onset of disability date of January 8, 2009. [R. 14.] The claim was denied initially and on

reconsideration by the Social Security Administration ("the Administration"). [R. 82–86,

99–100]. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on

_____

[1]A Report and Recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by a magistrate judge.

April 19, 2012, ALJ Walter C. Herin, Jr., conducted a de novo hearing on Plaintiff's claims. [R. 41–81].

The ALJ issued a decision on May 25, 2012, finding that Plaintiff had not been under a disability as defined by the Social Security Act ("the Act") from January 8, 2009, through the date of the decision. [R. 32.] At Step 1,[2] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2013, and had not engaged in substantial gainful activity since January 8, 2009, the alleged onset date. [R. 16, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe combination of impairments: degenerative disc disease with history of lumbar laminectomy; osteoarthritis; chronic pain syndrome on no current pain medications; rule out fibromyalgia; reactive depression; rule out bipolar disorder and somatoform disorder. [R. 16, Finding 3.] The ALJ also found Plaintiff had the following non-severe impairments: history of carpal tunnel syndrome, status post release on the left; hypertension; hyperlipidemia; benign prostatic hypertrophy; asthma; allergic rhinitis; status post umbilical and inguinal hernia repairs; insomnia and degenerative disc disease of the cervical spine. [*Id.*] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 18–19, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

2

> residual functional capacity to perform simple, routine tasks with no lifting or carrying over 10 pounds occasionally and less than 10 pounds frequently; no standing and/or walking over 2 hours in an 8-hour workday; occasional stooping, balancing, twisting, crouching, kneeling and climbing of stairs or ramps; no crawling or climbing of ladders or scaffolds; avoidance of hazards such as unprotected heights or dangerous machinery in an environment free of extremes of humidity, wetness and cold and no required interaction with the public.

[R. 19–31, Finding 5.] Based on this RFC finding, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work as a pharmaceutical supervisor, senior material technician, utility person, or realtor. [R. 31, Finding 6.] However, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 31, Finding 10.] On this basis, the ALJ found Plaintiff had not been under a disability from January 8, 2009, through the date of the decision. [R. 32, Finding 11.] Plaintiff requested Appeals Council review of the ALJ's decision, and the Council declined review. [R. 1–5.] Plaintiff filed this action for judicial review on August 14, 2013. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff argues the ALJ's decision is not supported by substantial evidence and that remand is necessary for the following reasons:

1.   the ALJ did not properly evaluate the treating physician opinions of Dr. W. Alaric Van Dam ("Dr. Van Dam"), Dr. Nicholas DePace ("Dr. DePace"), and Dr. Beth Rush ("Dr. Rush"); [Doc. 24 at 22–30];

2.   the ALJ did not adequately explain his RFC findings [*id.* at 31–36].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that

1. the ALJ properly weighed the medical opinion evidence of Drs. Van Dam, DePace, and Rush [Doc. 25 at 15–21]; and

2. the ALJ's RFC findings are supported by substantial evidence [*id.* at 21–25].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the

4

Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was

5

appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).   On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.   *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").   After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.   *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).   A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. &*

8

*Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the

9

[Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

C.    ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

D.    ***Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).    To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).    When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270

F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a

claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged

14

by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...

15

> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such

16

determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Treating Physician Opinions**

Plaintiff takes issue with the ALJ's weighing of the medical opinions of treating physicians Drs. Van Dam, DePace, and Rush contending that the ALJ failed to give them "controlling weight."  [Doc. 24 at 22.]  The Commissioner contends the ALJ properly evaluated the medical opinions of record and afforded greater weight to those opinions that were consistent with the record as a whole.  [Doc. 25 at 15.] The Court agrees with the Commissioner that the ALJ properly weighed those treating physician opinions in accordance with the law and sufficiently explained his reasons.

### *Summary of Relevant Medical Evidence*

#### *Dr. Van Dam*

Plaintiff, an established patient of Moore Orthopedics, saw Dr. Van Dam, M.D., of the practice on March 4, 2010.  [R. 601.]  Treatment notes indicate Plaintiff appeared to have a sacralized L5 segment with perhaps some instability at the L5-S1 area.  [*Id.*]  Dr. Van Dam noted he thought most of Plaintiff's pain was probably related to the foraminal

narrowing and advised treating with an injection or a nerve block and core stabilization exercises. [*Id.*]

Dr. Van Dam saw Plaintiff again on March 8, 2010, with complaints of left hand numbness and tingling which he claims to have had for years. [R. 602.] Plaintiff also complained of mild weakness with his grip, intermittent night symptoms, and symptoms when driving. [*Id.*] With respect to his back pain, Plaintiff reported that the injection did not help much and that he continues to get paresthesias down the legs and lower back pain. [*Id.*] Plaintiff appeared to have instability at L5-S1 and some foraminal narrowing, which might explain his symptoms. [*Id.*] A physical exam revealed symmetric deep tendon reflexes, motor testing of 5/5, positive Tinel's, and diminished sensation to light touch and pinprick in the first and third digits. [*Id.*] Nerve conduction studies performed the same day revealed prolonged median motor latency and prolonged sensory latency with a positive comparison test for carpal tunnel syndrome of the left upper extremity and no evidence of ulnar neuropathy. [*Id.*]

Also on March 8, 2010, Dr. Van Dam wrote a letter recommending that, based on his clinical findings and Plaintiff's continued discomfort in his lower back and legs, "that [Plaintiff] is not fit for any significant lifting at this point. Five pounds lifting, pushing, pulling and carrying would be his maximum at this point." [R. 617.] Dr. Van Dam indicated Plaintiff's treatment plan included trying some back stabilizing exercises and epidural injections. [*Id.*]

Plaintiff saw Dr. Van Dam again on April 23, 2010, complaining of continued lower back pain, left leg pain, significant discomfort and paresthesias down the leg. [R. 665.] Plaintiff complained his pain was worse with activities and that bending, twisting, and

18

turning seemed to aggravate him. [*Id.*] On physical exam, Dr. Van Dam observed: Plaintiff could get up and out of a chair without difficulty and his transitions were normal; straight leg raise and dural tension signs were not comfortable on the left as compared to the right; reflexes were +1 and symmetric; some edema at +1 mid tibia; proximal and distal motor testing at 5/5; sensation diminished to light touch and pinprick in the medially left lower leg and the dorsum of the foot; no pain over the greater trochanteric bursa; forward flexion of the lumbar spine at about 85 degrees, extension 5 degrees and lateral bending 5 degrees. [*Id.*] Dr. Van Dam also noted Plaintiff had full range of motion of the knees bilaterally with some pain over the medial joint lines bilaterally and that facet maneuvers were negative. [*Id.*] Based on the physical exam and x-rays, Dr. Van Dam diagnosed degenerative disc disease at L4-5 status post laminectomy, possible instability at L4-5, mild epidural fibrosis towards the right at L4-5, and a history of carpal tunnel syndrome. [*Id.*] Dr. Van Dam discussed with Plaintiff a selective nerve root block as the epidural injections had not been effective. [R. 666.] Dr. Van Dam also recommended that, due to his degenerative disc problems and lower back problems, Plaintiff not lift, push, pull, or carry anything. [*Id.*]

Plaintiff returned to Dr. Van Dam on June 23, 2010, with left leg numbness and tingling despite a previous lumbar surgery. [R. 673.] Physical exam revealed symmetric deep tendon reflexes, motor testing at 5/5, sensation diminished to light touch and pinprick in the medial and lateral portion of the left leg, and negative straight leg raises. [*Id.*] Dr. Van Dam noted that nerve conduction tests revealed normal peroneal and tibial motor latencies, as well as normal sensory latencies. [*Id.*] Additionally, the EMG, which was a normal study, revealed some mild evidence of reinnervation in the paraspinal muscles, but showed no evidence of acute radiculopathy, focal neuropathy, or plexopathy. [*Id.*] Dr. Van

Dam explained to Plaintiff that he did not have any actual nerve root compression or evidence of underlying peripheral neuropathy, although he does have borderline velocity. [*Id.*]

On January 6, 2011, Plaintiff saw Dr. Van Dam with complaints of continued left hip and leg pain. [R. 758.] Dr. Van Dam noted that Plaintiff has some stenosis at the L5 region for which a nerve block was recommended. [*Id.*] Dr. Van Dam suggested Plaintiff proceed with the nerve block and that a CT myelogram might help evaluate the foramen if he has good response from the nerve block. [*Id.*] Plaintiff was diagnosed with lumbar spondylosis without myelopathy and underwent a left L5 selective nerve root block on the same day. [R. 759.]

### Dr. DePace

On February 15, 2011, Plaintiff saw Dr. DePace, Ph.D., for an adult mental status evaluation. [R. 765.] With respect to his behavioral observations, Dr. DePace noted that Plaintiff, who drove himself to the appointment: was alert and oriented in all spheres, but that his psychomotor behaviors appeared to be somewhat restless; his speech was very fast and pressured and as loud although his production of it was within normal limits; his affect was quite labile; and he was irritable at times, and tearful at other times. [R. 766–67.] Dr. DePace also noted that Plaintiff's thought processes were quite tangential and he denied any history of perceptual disturbances and any history of suicidal or homicidal thinking. [R. 767.] Dr. DePace noted Plaintiff likely functioned in at least the average range intellectually. [*Id.*]

Dr. DePace diagnosed Plaintiff on Axis I with Probable Bipolar Disorder, Currently Manic; Rule out Panic Disorder NOS; and deferred a diagnosis on Axis II. [*Id.*] Dr. DePace

further opined that, based on Plaintiff's presentation that day, he believed Plaintiff would

have significant difficulties in maintaining focus to be able to perform three-step commends,

although when he is not in a manic episode, he should be able to do so without problem.

[*Id.*] Dr. DePace also found Plaintiff's tolerance for frustration to be quite limited during a

manic episode and his concentration to be "probably impaired." [R. 767–68.] Dr. DePace

also opined that

> [g]iven these observations, it is likely that he may not be able
> to effectively manage funds he has in his possession at the
> current time. Interpersonally, he does describe a long history
> of being able to appropriately and effectively interact with
> others, although his presentation here today suggests that this
> may not currently be the case. In additional to the physical
> problems that he says prevent him from performing activities
> of daily living, he appears to be highly distractible and had very
> poor concentration and this could also impact his ability to
> perform higher order activities of daily living requiring executive
> functioning.

[R. 768.]

### Dr. Rush

Plaintiff was referred to Dr. Rush, Ph.D., for a "NeuorPsy Consult" or cognitive

evaluation on February 8, 2012. [R. 835.] Plaintiff reported cognitive symptoms beginning

around 2005 during which time he was receiving treatments such as nerve blocks and

spinal injections to treat pain symptoms. [*Id.*] Plaintiff reported that, at the time, his sleep

was non-restorative, he had significant insomnia, and never felt well rested. [*Id.*] He also

reported fatigue being a significant issue, daily pain of at least an 8/10 in intensity, and a

sense of hopelessness about his condition and his inability to obtain relief. [*Id.*]

Dr. Rush noted with respect to Plaintiff's behavioral observations: Plaintiff walked

with a cane; seemed to understand conversation and test instructions; had normal speech;

21

appeared anxious and depressed; and he voiced anger and frustration about the fact that his situation has not improved.  [R. 836.]  Dr. Rush also noted that Plaintiff's performance was normal on an embedded test of effort and motivation and that his results appeared to be a valid estimate of his current cognitive status.  [*Id.*]  Dr. Rush documented Plaintiff's test results as follows:

> Performance is average on a word-reading measure used to estimate longstanding intellectual function.  Verbal and nonverbal intellectual abilities are estimated to be average. Immediate auditory attention is low average; he repeats 5 digits forward and 4 digits backward.  Complex auditory attention is high average.  Speed of word reading and color naming is mildly impaired to low average.  Speed of visual sequencing is average.  His ability to overcome interference from competing visual stimuli is low average.  Speed of mental flexibility on a visual task is average.  Performance is mildly impaired on a card sorting test requiring sustained concentration, reasoning, and mental flexibility.  Language skills are average.  Nonverbal problem solving ranges from low average on a timed task to average on an untimed test.  Memory is average with regard to learning efficiency, memory retention, and retrieval efficiency.

> His score of 38 on the Beck Depression Inventory-2 suggests severe clinical depression.  He reports passive suicidal ideation but denies intent or plan.  Symptom validity indicators from a detailed psychological assessment reveal defensiveness. Specifically, responses suggest unwillingness to admit to common personal shortcomings to which most people will admit as well as an exaggeration of problems and complaints that could reflect marked negative evaluation of one's life or a "cry for help."  The clinical profile is marked by significant elevations across a number of scales indicating marked distress with severe impairment of functioning.  The configuration of the scales suggests a person with particular concerns about physical functioning that have left him unhappy, with little energy or enthusiasm for concentrating on important life tasks and little hope for improvement in the future.  There is a ruminative preoccupation with physical function and impairment arising from physical symptoms that can be seen in individuals with conversion and/or somatoform

> conditions.  He endorses depression, anxiety with maladaptive behaviors aimed at controlling anxiety, perfectionism with inflexibility of thinking, social isolation, thought processes of convulsion and distraction because of psychiatric distress, and difficulty relaxing due to high perceived stress.  Distrust of treating professionals is endorsed.  DSM-IV diagnostic possibilities generated by the responses include somatoform disorder, Major Depressive Disorder, and Obsessive-compulsive and schizoid personality traits.

[R. 836–37.]

Dr. Rush concluded that Plaintiff demonstrated a grossly normal neuropsychological profile which revealed mild variability in attention and concentration across tasks.  [R. 837.] Dr. Rush noted that her "non-specific finding" did not necessarily correlate with underlying cerebral dysfunction, particularly when a person experiences significant psychiatric distress.  [*Id.*]  Dr. Rush noted her concern about Plaintiff's level of disability at such a young age and explained to him the importance of engaging in intensive, aggressive comprehensive pain rehabilitation that focuses on graduated physical symptoms in the long-term.  [*Id.*]  Dr. Rush believed Plaintiff to be a strong candidate for non-pharmacological pain rehabilitation programming and felt Plaintiff could not return to work until he participated in such intensive rehabilitation treatment.  [*Id.*]  Dr. Rush also recommended a psychiatry consultation to evaluate psychotropic treatment options for Plaintiff's high anxiety and severe depression.  [*Id.*]

### *Discussion*

Based on the above relevant medical evidence, the ALJ determined the following. In assessing Dr. Van Dam's opinion which essentially precluded Plaintiff from lifting 5 pounds, pushing, pulling, or carrying due to his degenerative disc and low back problems, the ALJ indicated he gave the opinion consideration and accepted the limitations given by

23

Dr. Van Dam, except the restriction to not lift more than 5 pounds because examinations did not show the level of severity that would require such a restriction. [R. 30.]

In considering Dr. DePace's opinion, the ALJ considered and gave significant weight to Dr. DePace's determination of Plaintiff's RFC findings and noted that Dr. DePace's findings supported the ALJ's determination that Plaintiff had mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. [R. 30.]

In evaluating Dr. Rush's opinion, the ALJ gave limited weight to her opinion that Plaintiff is disabled "'until he completes an intense rehabilitation treatment program'" because it was "not consistent with the opinion of Dr. Moore, internist, (Exhibit 34F), which openly questioned the extent of his subjective complaints."[6] [R. 30.]

The responsibility for weighing evidence falls on the Commissioner or the ALJ, not the reviewing court. See Craig, 76 F.3d at 589; Laws, 368 F.2d at 642; Snyder, 307 F.2d at 520. The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the

---

[6]Dr. Blake H. Moore ("Dr. Moore") conducted an orthopedic exam on Plaintiff on May 25, 2010, and made the following findings: physical exam reveals a well-developed, well-nourished male in no acute distress; examination of his extremities revealed no edema; gait was normal without the use of an assistive device; grip strength was 5/5; he was able to perform fine motor function; range of motion in the elbows, forearm, wrists, shoulders and cervical spine was full; range of motion in the hip, knee and ankle was also full. [R. 654–56.] In terms of mentation, personal hygiene was appropriate, and he was able to follow simple directions and was able to perform simple calculations of addition and subtraction. [Id. at 656.] Dr. Moore concluded that Plaintiff's range of motion was near full with minor decrement in the lumbar flexion and that, despite complaints of pain, Plaintiff was not maintained on a single analgesic at the time which raises some questions as to the actual extent of the disability evident. [Id.]

treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir.2005) (*citing* 20 C.F.R. § 404.1527). ALJs typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (*quoting Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c). Additionally, Social Security Ruling ("SSR") 96–2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*16 1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may

25

> determine whether an individual is disabled, they are reserved
> to the Commissioner. Such opinions on these issues must not
> be disregarded. However, even when offered by a treating
> source, they can never be entitled to controlling weight or given
> special significance.

SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C .F.R. § 404.1527(e)

(stating an ALJ does not have to "give any special significance to the source of an opinion

on issues reserved to the Commissioner," such as an opinion that the claimant is disabled,

the claimant's impairments meet or equal a listing, or the claimant has a certain RFC).

With respect to Dr. Van Dam's opinion that Plaintiff is limited to lifting 5 pounds or

no weight at all, the Court notes that, while Plaintiff cites to evidence of record showing that

Plaintiff suffered back and leg pain, the Court finds that the ALJ did not ignore this

evidence. The ALJ merely considered and weighed the evidence and came to a contrary

conclusion about Plaintiff's ability to lift more than 5 pounds. The ALJ explained as follows:

> The evidence does not show significant strength deficits,
> circulatory compromise, neurological deficits, muscle spasms,
> fasciculations, fibrillations or muscle atrophy or dystrophy that
> are often associated with long standing, severe or intense pain,
> and physical inactivity. The claimant's testimony is not credible
> concerning the severity of his symptoms and the extent of his
> limitations. Neither the severity nor the extent is supported by
> the objective medical evidence of record. The claimant alleges
> that he experienced debilitating low back and knee pain in
> addition to chronic pain syndrome, fibromyalgia and limitations
> due to mental impairments that prevent him from working.
> However, physical examinations have not shown the
> restrictions and limitations that the claimant has alleged. There
> was a past history of a diskectomy/laminectomy; however,
> there is no updated evidence that shows any significant
> degenerative changes that would suggest additional surgery.
> The evidence has strongly suggested strengthening along with
> body mechanics and core strengthening and the evidence
> demonstrated he was consistent with using body mechanics
> with all bending, lifting and rotational movements and resumed
> all activities at home without pain occurring in his back.

26

> Examinations have shown good strength, normal gait and good range of motion. There has been no additional imaging that has shown any significant changes in the claimant's condition resulting in additional surgery.

[R. 29–30.]  To the extent Plaintiff contends the ALJ ignored evidence or substituted his own views [Doc. 24 at 27–28], Plaintiff failed to identify the evidence ignored by the ALJ. It appears Plaintiff would like this Court to re-weigh the evidence considered by the ALJ and/or require the ALJ to re-weigh the evidence; however, the Court finds the ALJ has already met his duty to weigh the evidence and explain his evaluation of Dr. Van Dam's opinion.

With respect to Dr. DePace's opinion, Plaintiff contends that, while the ALJ accorded the opinion significant weight, the ALJ's RFC findings failed to include any restrictions related to persistence or pace; failed to account for a need for unscheduled work breaks or a low-pace or non-production work environment; and only included one restriction related to concentration limiting Plaintiff to "simple, routine tasks."   [Doc. 24 at 28.]   The Commissioner argues Plaintiff's position is without merit because the ALJ properly accounted for Plaintiff's limitations by limiting him to simple routine work,  and Dr. DePace did not indicate any need for unscheduled work breaks or a low-pace or non-production work environment as suggested by Plaintiff.  [Doc. 25 at 18–19.]

In evaluating Plaintiff's mental impairments, the ALJ considered the criteria of Listing 12.02, "paragraph B" and found that Plaintiff had no more than mild restrictions in his activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence and pace, and no episodes of decompensation of extended duration.  [R. 18–19.]  In making this finding, the ALJ referenced a September 8, 2009,

functional capacity evaluation in which Plaintiff demonstrated he had no difficulty socializing with other staff members or the examiner.  [R. 18.]  The ALJ also referenced a May 25, 2010, examination by Dr. Moore finding Plaintiff's "mentation, and personal hygiene were appropriate.  He was able to follow simple directions and affect was normal.  He was able to perform simple calculations of addition and subtraction."  [*Id.*]  Further, the ALJ noted Dr. DePace's February 15, 2011, notes in which he concluded that Plaintiff "appeared highly distractible and had poor concentration, which would also affect his ability to perform higher order activities of daily living that required executive functioning."  [R. 19.]  Accordingly, in light of these limitations, the ALJ properly discussed the reasons he limited Plaintiff to sedentary work involving simple, routine tasks with no interaction with the public.  [R. 19.]


Upon consideration of Plaintiff's arguments with respect to Plaintiff's mental limitations, the undersigned can discern no reversible error in the ALJ's findings.  The Court notes that the courts in this district, and elsewhere, have consistently found that moderate limitations in concentration, persistence, and pace may be properly accounted for by restricting Plaintiff to "simple, routine tasks."  *See Sensing v. Astrue*, C/A No. 6:10-3084-RBH, 2012 WL 1016581, at *7 (D.S.C. March 26, 2012); *see also McDonald v. Astrue*, 293 F. App'x 941, 946–47 (3d Cir. 2008) (noting that the ALJ properly accounted for his finding that the claimant had moderate limitations in concentration by limiting him to simple, routine tasks); *Menkes v. Astrue*, 262 F. App'x 410, 412 (3d Cir. 2008) (where the claimant had moderate limitations in concentration, persistence and pace, the ALJ properly accounted for these mental limitations in the hypothetical question by restricting the type of work to "simple routine tasks"); *Hyser v. Astrue*, No. 1:11-CV-00102, 2012 WL 951468, at *6

(N.D.Ind. Mar. 20, 2012) (finding limitation to jobs "involving only occasional contact with public and co-workers" accounted for moderate social functioning); *Wood v. Barnhart*, Civ. 05-0432 SLR, 2006 WL 2583097, at *11 (D.Del. Sept. 7, 2006) (by restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace); *Smith-Felder v. Comm'r*, 103 F. Supp. 2d 1011, 1014 (E.D.Mich. 2000) (hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress).  Additionally, Plaintiff failed to explain his argument for imposing additional limitations to a low stress environment or non-production type jobs. And, even if the Court were to find the ALJ erred in failing to find that such limitations were necessary, Plaintiff has failed to explain why a limitation to simple, routine tasks with no exposure to the public fails to accommodate these limitations.  Based on the above, the Court finds the ALJ properly evaluated Dr. DePace's opinion, and the ALJ's failure to include these additional limitations is not error.

Plaintiff also complains the ALJ improperly accorded "limited weight" to Dr. Rush's opinion that Plaintiff could not return to competitive work until he participates in intensive rehabilitation treatment.  [Doc. 24 at 29.]  Plaintiff contends the only reason the ALJ gave for discounting this opinion is that it is contradicted by the opinion of Dr. Moore, which was performed two years earlier and prior to Plaintiff's June 29, 2011, diagnosis with a medial meniscus tear and a March 5, 2012, MRI showing severe bilateral neural foraminal encroachment at L5-S1, as well as moderate to severe left and moderate right neural foraminal encroachment at L4-5.  [*Id.* at 29–30.]  The Commissioner contends, however,

that Dr. Rush's opinion that Plaintiff could not work or should be awarded disability benefits was not entitled to any particular weight because it pertained to an issue reserved to the Commissioner, and the ALJ reasonably rejected Dr. Rush's opinion due to its inconsistency with Dr. Moore's consultative opinion. [Doc. 25 at 20.] Additionally, the Commissioner contends that Plaintiff's citation to medical records postdating Dr. Moore's opinion is unavailing because those records do not establish disabling functional limitations and do not relate to Dr. Rush's cognitive evaluation. [*Id.* at 21.]

In evaluating Plaintiff's impairments, the ALJ considered and gave limited weight to the opinion of Dr. Rush (who performed a cognitive evaluation in February 2012) that Plaintiff is disabled "until he completes an intense rehabilitation treatment program" (or non-pharmacological pain rehabilitation), but gave significant weight to the opinion of Dr. Moore (who conducted an orthopedic exam in May 2010) which raised the question as to the actual extent of Plaintiff's disability based on the fact that Plaintiff was not on any prescribed narcotic medications which would give one the impression that his allegation of total inability to perform all work-related activities is not as severe as alleged. [R. 30.] With respect to Dr. Rush's finding of disability, the law is clear that an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity. *See* 20 C.F.R. § 404.1527(e), SSR 96–5p, 1996 WL 374183, at *5 (July 2, 1996). And, Plaintiff has failed to explain how consideration of the additional treatment subsequent to Dr. Moore's opinion would require the Court to find the ALJ's decision to be unsupported by substantial evidence, particularly when the ALJ considered this evidence in making his

RFC determination.  Thus, based on the above, the Court finds that the ALJ properly evaluate Dr. Rush's opinion.

**RFC Determination**

Plaintiff contends that while the "ALJ summarized some of the medical evidence, the Plaintiff asserts his RFC assessment is conclusory and does not contain sufficient rationale or reference to the supporting evidence, as required by SSR 96-8p."  [Doc. 24 at 36.] Specifically, Plaintiff contends the ALJ:

* failed to properly identify and make necessary findings as to which of Plaintiff's impairments were severe;

* failed to explain why there was no restriction on sitting;

* failed to explain why there was no requirement that Plaintiff elevate his legs;

* failed to explain why there was no requirement that Plaintiff needed a cane to ambulate;

* failed to find Plaintiff's hand impairments to be severe and failed include any manipulative restrictions;

* failed to explain why there are no mental restrictions related to persistence and pace.

[*Id.* at 32–36.]  On the other hand, the Commissioner argues that the ALJ's RFC findings are supported by substantial evidence.  The Court agrees with the Commissioner.

### *ALJ's RFC Assessment*

In determining Plaintiff's RFC, the ALJ followed a two-step process in which he first determined whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms.  [R. 20.]  After determining the presence of an impairment or impairments at

31

Step 1, the ALJ, at Step 2, evaluated the intensity, persistence, and limiting effects of

Plaintiff's symptoms to determine the extent to which they limit the claimant's functioning.

[*Id.*] Following this two-step process, the ALJ considered Plaintiff's underlying physical and

mental impairments and the associated medical records.  [*Id.* at 20–31.]

> The ALJ found Plaintiff retained

> > residual functional capacity to perform simple, routine tasks
> > with no lifting or carrying over 10 pounds occasionally and less
> > than 10 pounds frequently; no standing and/or walking over 2
> > hours in an 8-hour workday; occasional stooping, balancing,
> > twisting, crouching, kneeling and climbing of stairs or ramps;
> > no crawling or climbing of ladders or scaffolds; avoidance of
> > hazards such as unprotected heights or dangerous machinery
> > in an environment free of extremes of humidity, wetness and
> > cold and no required interaction with the public.

[R. 19–31, Finding 5.]

> In determining the extent to which Plaintiff's impairments limit his function, the ALJ

explained as follows:

> > In sum, based on the objective and subjective factors, I find
> > that the claimant is neither credible nor persuasive.  There is
> > a long history of doctor shopping and it appears the claimant
> > is not satisfied with any physician.  He complains he was
> > mistreated or maltreated.   The claimant has a history of
> > non-compliance   with   prescribed   medications   as   he
> > discontinues his medications because he does not like the side
> > effects (rash, muscle aches, etc.).  The claimant testified that
> > he obtained a GED and underwent training in real estate and
> > had his real estate license.  He stated that he has a driver's
> > license and drove to the hearing.  He stated that he goes to
> > Wal-Mart and his wife does the shopping.  He is able to take
> > care of his activities of daily living but does not cook.  He does
> > however use the microwave, wash clothes, folds/hangs the
> > clothes, sweeps the floor, uses the dishwasher and puts the
> > trash in the can.  The claimant testified that he is able to lift and
> > carry less than 5 pounds and can sit for 3/4 to 1 hour.  He can
> > stand for a couple of minutes (about 5 minutes) and can walk
> > 500 feet and then stop for 10 minutes.  He uses a cane and a

32

brace.  He also indicated that he cannot squat or kneel and has difficulty with balance.   He also indicated problems with focusing and concentrating because he has panic attacks and bipolar issues.  The claimant was not credible in his testimony as I noted he smiled and even laughed at times as he was describing his pain.  He admitted that he takes no prescription medications for pain of any kind, and has not for several years. He testified that he takes Aleve frequently, but not every day. He is not receiving any treatment with any psychiatrist, psychological or mental health center at this time and takes no psychotropic medications.

The evidence does not show significant strength deficits, circulatory compromise, neurological deficits, muscle spasms, fasciculations, fibrillations or muscle atrophy or dystrophy that are often associated with long standing, severe or intense pain, and physical inactivity.  The claimant's testimony is not credible concerning the severity of his symptoms and the extent of his limitations.  Neither the severity nor the extent is supported by the objective medical evidence of record.  The claimant alleges that he experienced debilitating low back and knee pain in addition to chronic pain syndrome, fibromyalgia and limitations due to mental impairments that prevent him from working. However, physical examinations have not shown the restrictions and limitations that the claimant has alleged.  There was a past history of a diskectomy/laminectomy; however, there is no updated evidence that shows any significant degenerative changes that would suggest additional surgery. The evidence has strongly suggested strengthening along with body mechanics and core strengthening and the evidence demonstrated he was consistent with using body mechanics with all bending, lifting and rotational movements and resumed all activities at home without pain occurring in his back. Examinations have shown good strength, normal gait and good range of motion.  There has been no additional imaging that has shown any significant changes in the claimant's condition resulting in additional surgery.

. . .

After careful review of the entire record, I find that the evidence as to the claimant's condition, activities and capabilities and other subjective symptoms is not consistent with the degree of disabling impairments he alleged.  Although the claimant has impairments that impose some limitations upon his ability to

33

work the evidence fails to substantiate that his impairments, either singly or in combination, are of the severity as to preclude the performance of work-related activities.  Upon review of the total evidence of record, and in consideration of the combined effect of the claimant's impairments, including all severe impairments, nonsevere impairments, and subjective complaints, I find the claimant's degenerative disc disease with history of lumbar laminectomy; osteoarthritis; chronic pain syndrome on no current pain medications; rule out fibromyalgia; reactive depression; rule out bipolar disorder and somatoform disorder in combination, limit the claimant to perform simple, routine tasks with no lifting or carrying over 10 pounds occasionally and less than 10 pounds frequently; no standing and/or walking over 2 hours in an 8-hour workday; occasional stooping, balancing, twisting, crouching, kneeling and climbing of stairs or ramps; no crawling or climbing of ladders or scaffolds; avoidance of hazards such as unprotected heights or dangerous machinery in an environment free of extremes of humidity, wetness and cold and no required interaction with the public.

[R. 29–31.]

### Discussion

The Administration has provided a definition of RFC and explained what an RFC

assessment accomplishes:

RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . .

SSR 96-8p, 61 Fed. Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted).  The RFC assessment must first identify Plaintiff's functional limitations or restrictions and assess his work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945.  *See id.*  Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy.  *Id.*

In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of a claimant's impairments, including those that are not severe.  *Id.* at 34,477.  While a non-severe impairment standing alone may not significantly limit a claimant's ability to do basic work activities, it may be crucial to the outcome of a claim when considered in combination with limitations or restrictions due to other impairments.  *Id.*  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments.  It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.)  Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC . . . .

SSR 96-8p, 61 Fed. Reg. at 34,476.  To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory

findings, lay evidence, and medical source statements.  *Id.* at 34,477.  SSR 96-8p specifically states, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  *Id.* at 34,478.

The ALJ must also consider the degree to which any non-exertional limitations may further erode Plaintiff's ability to work.   The Administration addressed the role of nonexertional limitations in an RFC assessment as follows:

> Nonexertional capacity considers all work-related limitations and restrictions that do not depend on [a claimant]'s physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions. It assesses [a claimant]'s abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision). In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).
>
> As with exertional capacity, nonexertional capacity must be expressed in terms of work-related functions.... Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

SSR 96–8p, 61 Fed.Reg. at 34,476.

In this case, Plaintiff failed to identify any impairment or limitation that was omitted from consideration by the ALJ during the sequential evaluation process.  Thus, even if an impairment was erroneously labeled non-severe, the fact that the ALJ considered both Plaintiff's severe and non-severe limitations during the sequential evaluation beyond Step

2 makes the error harmless.  *See Groberg v. Astrue*, 415 F. App'x 65, 67 (10th Cir. 2011)

("An error at step two concerning the severity of a particular impairment is usually harmless

when the ALJ . . . finds another impairment is severe and proceeds to the remaining steps

of the evaluation.").

Additionally, the Court does not find merit in Plaintiff's argument that the ALJ failed

to explain which impairments he found to be contributing to the Plaintiff's restrictions.  An

ALJ is only required to "minimally articulate" his reasoning so as to "make a bridge"

between the evidence and his conclusions.  *See Fischer v. Barnhart*, 129 F. App'x 297, 303

(7th Cir. 2005); *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (". . . ALJ is not required

to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does

not indicate that it was not considered.").  A formalistic factor-by-factor recitation of the

evidence is simply not required.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ reasonably articulated his reasons for the RFC determination.

Further, Plaintiff complains that the ALJ failed to include limitations in the RFC

determination with respect to: sitting; elevating his legs periodically; his need for an

assistive device; manipulative restrictions due to carpal tunnel; and restrictions related to

persistence and pace.  [Doc. 24 at 32–36.]

With respect to limitations on sitting, the ALJ referenced a physical therapy

evaluation dated January 27, 2009, which indicated Plaintiff's sitting and standing were

both fair.  [R. 21.]  Further, sedentary work normally involves at least 6 hours of sitting in

the 8-hour workday with breaks in the morning, lunchtime, and the afternoon in

approximately 2 hour intervals.  SSR 96–9P, 61 Fed.Reg. at 34482.  Thus, restricting

Plaintiff to sedentary work necessarily created a sitting limitation.  Additionally, Plaintiff

failed to reference any medical opinion of record that Plaintiff is required to have a sit/stand option or requires an option to elevate his leg; thus, the ALJ was not required to include these limitations in Plaintiff's RFC.

With respect to Plaintiff's argument regarding the need for a cane, review of treatment notes indicates that Plaintiff consistently showed good strength and normal gait and good range of motion on examination [R. 30, 236, 242, 340, 445, 511, 581, 622, 625, 638, 656 (gait normal without use of assistive device), 659, 670, 851, 855, 861, and 870] and only a few notes indicated that he used a cane at all [R. 836 (Plaintiff "walked with a cane."), 840–41(Plaintiff is "ambulatory but uses a single-point cane intermittently because of his chronic knee pain.").]  As stated above, the ALJ, not the Court, is authorized to review the evidence and make conclusions regarding the weight of the evidence.  Plaintiff has failed to show how the ALJ's weighing of this evidence is in error.

With respect to manipulative restrictions, the ALJ cited to postoperative notes dated October 13, 2010, where Plaintiff was noted to have full range of motion of his fingers and wrist with sensation in the fingers which was normal objectively and improved subjectively. Again, Plaintiff failed to direct the Court to any opinion evidence regarding Plaintiff's manipulative limitations.

Lastly, as addressed above, the ALJ accommodated Plaintiff's limitations in concentration, persistence and pace by limiting Plaintiff to simple, routine tasks.  *See Sensing v. Astrue*, C/A No. 6:10-3084-RBH, 2012 WL 1016581, at *7 (D.S.C. March 26, 2012).

In conclusion, the Court finds the ALJ's RFC determination is supported by substantial evidence.  The ALJ specifically cited to the evidence of record forming the basis

of his findings regarding Plaintiff's RFC [*see* R. 20–29] and reasonably concluded that, "[u]pon review of the total evidence of record, and in consideration of the combined effect of the claimant's impairments, including all severe impairments, non-severe impairments, and subjective complaints, I find the claimant's degenerative disc disease with history of lumbar laminectomy; osteoarthritis; chronic pain syndrome on no current pain medications; rule out fibromyalgia; reactive depression; rule out bipolar disorder and somatoform disorder in combination, limit the" Plaintiff as described in the RFC.  [R. 30–31.]

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.


February 2, 2015                          s/Jacquelyn D. Austin
Greenville, South Carolina                United States Magistrate Judge